**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GINA GARAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| NEVERLAND EVENTS & ARTIST ) | |
| MANAGEMENT CORP., and ) | |
| ANTHONY DIFIORE, ) | **JURY DEMAND** |
| ) | |
| Defendants. ) | |

## COMPLAINT

NOW COMES Plaintiff, GINA GARAN (hereinafter "Plaintiff"), by and through her attorneys Blaise & Nitschke, P.C., and complains against Defendants, NEVERLAND EVENTS & ARTIST MANAGEMENT and ANTHONY DIFIORE (hereinafter "Defendants"). In furtherance whereof, Plaintiff states as follows:

## PARTIES

1. Plaintiff, GINA GARAN, is an individual, and was at all times mentioned in this Complaint, an employee and agent of Neverland Events & Artist Management. Plaintiff is domiciled in the Borough of Brooklyn, New York City, New York.

2. Defendant, Neverland Events & Artist Management Corp. (hereinafter "Neverland"), is an Illinois Corporation that provides multi-faceted agency and event production services. In addition to artist management, Neverland provides E-Commerce and Fulfillment solution for celebrities nationwide.

3. Defendant, Anthony DiFiore (hereinafter "DiFiore"), an individual, is and was at all times mentioned herein the President of Neverland Events & Artist Management and domiciled in Chicago, Illinois.

4. Defendants are registered to conduct business in the State of Illinois with the registered agent in Cook County, Illinois.

## JURISDICTION

5. Jurisdiction is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1332, as a diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00.

6. Personal Jurisdiction over Defendants exists as both Anthony DiFiore and Neverland Events & Artist Management Corp. (by Illinois incorporation) are citizens of the state of Illinois.

7. Plaintiff's Independent Contractor Agreement (hereinafter the "Contract") with Defendants additionally contains a Governing Law and Remedies Clause designating exclusive jurisdiction to the State of Illinois, and any state or federal court within Cook County, Illinois.

## BACKGROUND

8. Neverland engaged Plaintiff to work for Neverland on November 9, 2017. *See* November 7, 2017 correspondence from A. Difiore, attached hereto and incorporated herein as Exhibit A.

9. Plaintiff was to act as an agent and manager for various drag performers under the umbrella of Neverland. In addition, Plaintiff's responsibilities included handling the merchandise matters of Neverland clients and obtaining new clients for Neverland's management and merchandising endeavors.

10. Plaintiff and Defendants agreed on an eighty percent-twenty percent (80%/20%) split of profits and commissions for Plaintiff's pre-existing client(s), with 20% to Defendants to cover operating costs.

11. Plaintiff and Defendants together pursued representation for the contestants of Rupaul's Drag Race Season 10 following the season's end.

12. The parties agreed to split both the fifteen percent (15%) representation fee and the four percent (4%) merchandise profit fee for any performers signed from Seasons 10 and 11 of Rupaul's Drag Race.

13. Plaintiff was directly responsible for the signing of Miz Cracker, Monet X Change, and Monique Heart to Neverland for management. Miz Cracker and Monet X Change reside in New York, and Plaintiff spend a lot of personal time and funds meeting with the performers and pursuing them as clients for Neverland.

14. Plaintiff flew out to Chicago and paid for a two-night hotel stay at her own expense to meet with and sign Monique Heart to Neverland.

15. Plaintiff additionally worked with Defendants to obtain The Vixen as a client for Neverland.

16. Defendants further manage the following Neverland clients whose relationships existed with Neverland before Plaintiff was engaged by Defendants: Naomi Smalls, Shea Coulee, Kim Chi, and Sasha Velour.

17. Plaintiff was at times directed to pitch Neverland clients who were not specifically assigned to Plaintiff and was authorized to execute certain responsibilities with respect to Neverland clients at the request of Defendants.

18. On or about November 17, 2017, Plaintiff was asked by Defendants to pitch Naomi Smalls to Blow Pony and to iCandy for a November gig.

19. On or about December 3, 2017, Plaintiff was asked by Defendants to pitch Naomi Smalls for a Conde Nast gig in New York City.

20. On or about December 13, 2017, Plaintiff was asked by Defendants to Pitch Naomi Smalls, Shea, and Pearl to Jewels at Hamburger Mary's in Chicago.

21. In a December 20, 2017 correspondence with Defendant, DiFiore asks Plaintiff, "Would it be easier if I add you to the calendars for Sasha, Kim and Naomi so that you can check their availability if gigs ask about them?"

22. On April 19, 2018 and May 7, 2018, Plaintiff received template contracts for clients Naomi Smalls, Shea, and Sasha Velour for Plaintiff to use for booking purposes.

23. On or about May 24, 2018, following DragCon Los Angeles, a trade-show, Sasha Velour approached Plaintiff to have dinner and discuss the performer's issues with an employee of House of Velour ("HoV"). Plaintiff immediately informed Defendants of the meeting, for which DiFiore responded supportively, "[Plaintiff would] be perfect to get HoV in order". *See* text chain, attached hereto and incorporated herein as Exhibit B.

24. Consistent with DiFiore's instruction to Plaintiff to help get HoV "in order", on or about May 26, 2018, DiFiore granted Plaintiff access to view private events on Defendant DiFiore's Google Calendar for Neverland client, Sasha Velour. *See* confirmation email for Sasha Velour calendar share, attached hereto and incorporated herein as Exhibit C.

25. During the week of May 25, 2018 through May 31, 2018, Plaintiff made multiple attempts to discuss her role face-to-face with Defendant DiFiore regarding Sasha Velour, but was ignored or denied outright. *See* Group Exhibit D.

26. Plaintiff continued to pitch for multiple clients at the request of DiFiore and for the benefit of Neverland.

27. On or about June 2, 2018, Plaintiff was responsible for the negotiation and booking of a Six Thousand Dollar ($6,000.00) MAC Cosmetics event for Sasha Velour. See May 29, 2018 Correspondence re MAC event, attached hereto and incorporated herein as Exhibit E.

28. Without any explanation, on or about June 5, 2018, DiFiore unilaterally excommunicated Plaintiff by ignoring all correspondence attempts, restricting Plaintiff's access to previously shared calendars, denying Plaintiff access to her company credit card, blocking Plaintiff's number and deleting Plaintiff's company e-mail, all before notifying Plaintiff of his actions or her apparent immediate termination, without cause and/or an opportunity to cure pursuant to Paragraph 7 of the Contract.

29. On or about June 5, 2018, DiFiore further contacted Plaintiff's clients to inform them that he had terminated Plaintiff but failed to contact or discuss the matter directly with Plaintiff, let alone comply with Paragraph 7 of the Contract.

30. On or about June 12, 2018, one week following Defendants' disconnection of Plaintiff's assets and resources, Plaintiff received a termination letter from Defendants' attorney on behalf of DiFiore and Neverland. The letter contains false allegations of solicitation and harassment of Neverland's client or accounts in violation of the Confidentiality, Non-Competition and Non-Solicitation Agreement. *See* Termination Letter, attached hereto and incorporated herein as Exhibit F.

31. All of the Defendants had actual and/or constructive knowledge of the acts described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the

5

breaching and/or defamatory acts, and/or retained the benefits of said breaching and/or defamatory acts.

## COUNT I
## DEFAMATION *PER SE* AGAINST ALL DEFENDANTS

32. Plaintiff re-alleges and incorporates paragraphs 1 through 31 as if fully set forth herein.

33. Illinois Supreme Court has recognized four categories of statements that are considered defamatory *per se*. In pertinent part, categories three (3) and four (4) are defined as, "(3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability in his or her." trade, profession or business." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10, 607 N.E.2d 201, 180 Ill. Dec. 307 (1992).

34. "For purposes of defamatory *per se* claims, a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning." *Tuite v. Corbitt*, 224 Ill. 2d 490, 494, 310 Ill. Dec. 303, 306, 866 N.E.2d 114, 117 (2006). This has been extended to considering the surrounding events leading up to and following the defamatory statement when determining whether the innocent construction rule is incompatible with the circumstances. *Tuite v. Corbitt*, 224 Ill. 2d 490, 515, 310 Ill. Dec. 303, 318, 866 N.E.2d 114, 129 (2006).

35. On or about June 5, 2018, Clients of Neverland received correspondence from Defendants containing false statements of material fact about Plaintiff, purposefully seeking to damage the work reputation of Plaintiff. Indeed, the correspondence falsely stated that Plaintiff had failed to perform her duties and had breached obligations to Defendants.

36. Given the circumstances of Plaintiff's immediate termination, the defamatory statements made about Plaintiff cannot be "innocently interpreted". *Chapski v. Copley Press*, 92 Ill. 2d 344.

37. Plaintiff's reputation was damaged as a result of Defendants' defamatory statements.

## COUNT II
## FALSE LIGHT INVASION OF PRIVACY AGAINST ALL DEFENDANTS

38. Plaintiff re-alleges and incorporates paragraphs 1 through 37 as if fully set forth herein.

39. "In order to recover for false light, a plaintiff must plead and prove (1) that defendant placed [her] in a false light before the public, (2) that the false light in which [s]he was placed would be highly offensive to a reasonable person, and (3) that defendant acted with actual malice." *Poulos v. Lutheran Soc. Servs. of Ill., Inc.*, 312 Ill. App. 3d 731, 734, 245 Ill. Dec. 465, 469, 728 N.E.2d 547, 551 (2000).

40. "The false light tort protects a person's interest in being free from false publicity." *Moriarty v. Greene*, 315 Ill. App. 3d 225, 227, 247 Ill. Dec. 675, 679, 732 N.E.2d 730, 734 (2000).

41. The false light in which Plaintiff has been placed is clear by Defendants' subversive and defamatory correspondence to Plaintiff's clients.

42. Defendant willfully damaged the reputation of Plaintiff through letters to clients that publicly demean Plaintiff, claiming performance incompetence with no basis to substantiate his false statements. To the contrary, paragraphs 13-21 above and all corresponding Exhibits serve to demonstrate the contracts, gigs, and positive client relationships fully executed by Plaintiff.

43. As a result of Defendants' actions, the false light in which the plaintiff was placed caused her to suffer pecuniary losses stemming from lost business opportunities and/or employment, including but not limited to Plaintiff's usual summer freelance work as a video producer for the months of June, July and August.

## COUNT III
## BREACH OF CONTRACT AGAINST NEVERLAND

44. Plaintiff re-alleges and incorporates Paragraphs 1 through 43 as if fully set forth herein.

45. The required elements of a breach of contract claim in Illinois are the standard ones of common law: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.*" Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007), quoting *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 845 N.E.2d 22, 30, 300 Ill. Dec. 601 (Ill. App. 2006).

46. Offer, acceptance, and consideration are established as both parties are of sound mind and willfully agreed to their contractual obligations. Plaintiff performed according to the terms of Plaintiff's obligations, exceeding at times her duties at the request of Neverland as employer.

47. As of November 9, 2017, Plaintiff and Defendants were bound by the terms of the Confidentiality, Non-Competition and Non-Solicitation Agreement (hereinafter the "Agreement").

48. Pursuant to ¶ 3 of the Agreement, either parties are granted the freedom to terminate the agreement at any time "with notice".

49. As of November 9, 2017, Plaintiff and Defendants were bound by the terms of the Independent Contractor Agreement (hereinafter the "Contract").

50. Paragraph (7) of Plaintiff's Contract with Defendants titled *Termination* states, "Neverland may immediately terminate this Agreement if Contractor breaches a material obligation under this Agreement, and such breach is not cured within ten (10) business days after Contractor's receipt of written notice of the breach."

51. Defendants notified Plaintiff's clients of her termination without first providing any actual notice of any perceived breach and/or an opportunity to cure to Plaintiff herself.

52. Instead, Plaintiff received a letter of immediate termination from Defendants' attorney one week following the clients' receipt of correspondence that Plaintiff no longer worked for Neverland.

53. Plaintiff's attempts to contact Defendants to discuss the situation were to no avail. Defendants additionally made no effort to contact Plaintiff directly or speak with Plaintiff in person or telephonically prior to the issuing of Plaintiff's termination letter.

54. Additionally, Plaintiff never received any notice to cure the alleged breach in accordance with the terms of paragraph (7) of the Contract. Plaintiff was instead immediately terminated without cause to substantiate the false allegations in the termination letter.

55. As a result, Defendants have breached their Contract and Agreement with Plaintiff.

56. Plaintiff has been damaged by Defendants in that she lost business opportunities as a freelance television producer and forewent opportunities to gain additional employment. In addition, Plaintiff is damaged by the amount of commissions she should have collected had Defendants not breached the contract with her.

57. Despite the Contract providing that Plaintiff is entitled to commissions for Miz Cracker, Monet X Change, Monique Heart, and the Vixen, Neverland had failed to disclose and pay those commissions that Plaintiff would be entitled to even if her termination was effective on June 9, 2018 (the date Plaintiff received the termination letter at her residence).

58. Alternatively, Plaintiff contends that since her termination was not effective on June 9, 2018 for Neverland's failure to comply with the terms of the Contract that it drafted, Plaintiff is entitled to commissions for all commissions that would have been earned by Plaintiff but for the wrongful termination through the date this Court determines that there has been a termination of Plaintiff in conformity with the terms of the Contract.

59. Defendants have damaged Plaintiff in excess of $75,000.00 for the breach of contract claim.

## COUNT IV
## DECLARATORY JUDGMENT:
## UNENFORCEABILITY OF NON-COMPETE
## AGAINST NEVERLAND

60. Plaintiff re-alleges and incorporates Paragraphs 1 through 59 as if fully set forth herein.

61. The Non-Compete Clause and the relevant definitions within the Agreement state as follows:

> 2h. You covenant and agree that, during the term of your engagement with the Company and for twelve (12) months after the termination thereof, regardless of the reason for the termination, you will not, directly or indirectly, anywhere in the Territory, on behalf of any Competitive Business perform the same or substantially the same Job Duties.
>
> 2a(2) "Competitive Business(es)" include any firm, partnership, joint venture, corporation and/or any other entity and/or person, and/or licensee of such entity, that develops, manufactures, markets, distributes, and/or sells any of the products described in Section 2.a.(1).

10

> 2a(1) "Business of the Company" means the highly competitive business of developing, marketing and managing events and LGBTQ artists and influencers along with all associated tasks.
>
> 2a(3) Your "Job Duties" are those duties reasonably be prescribed by the Company during the period of your engagement with the Company.
>
> 2a(9) "Territory" means any area in Neverland has previously done business and within 20 mile radius of the same.

62. "In order to be enforceable, a non-compete provision must be reasonable in time, geographic territory, and scope of activities." *Distrib. Serv. v. Stevenson*, 16 F. Supp. 3d 964, 966 (S.D. Ind. 2014). Section 2a(9) is unenforceable as Neverland claims to have a presence on four (4) continents and a global reach regarding venues for clientele base. By definition, the Non-Compete is unreasonable with respect to Neverland's claimed geographical territory.

63. Defendants' Non-Compete Clause is further unenforceable and unconscionable by way of Plaintiff's immediate termination. Simply, Plaintiff has no consideration for which they are bound to the Agreement.

64. "Under Illinois law, a covenant not to compete, such as the one at issue in this case, is not enforceable unless the employer can demonstrate that a "protectable interest" justifies it." *Gorman Publ'g Co. v. Stillman*, 516 F. Supp. 98, 104 (N.D. Ill. 1980). "First, a covenant not to compete will be enforced if the employee acquired confidential information through [her] employment and subsequently attempted to use it for [her] own benefit." *Morrison Metalweld Process Corp. v. Valent*, 97 Ill. App. 3d 373, 374, 52 Ill. Dec. 825, 826, 422 N.E.2d 1034, 1035 (1981).

65. Plaintiff was completely transparent with Defendants about her contacts with any of Neverland clients in her capacity as an agent and employee of Neverland. Plaintiff executed

the use of confidential information only in her capacity as an agent of Neverland and to the benefit and growth of Defendants.

66. "Second, an employer's interest in its customers also is deemed proprietary if, by the nature of the business, the customer relationship is nearly permanent and but for [her] association with [employer], [employee] would never have had contact with the clients in question." *Morrison Metalweld*, 97 Ill.App.3d at 376.

67. Miz Cracker, Monet X Change, and Monique are first and foremost Plaintiff's contacts, signed to Neverland solely by the efforts of Plaintiff.

68. Defendant DiFiore made clear to Plaintiff and certain clients of Neverland his alternative views of Plaintiff as an "opportunist", paranoid that she was using her position with Neverland to poach Defendants' contacts.

69. The Non-Compete is unenforceable because it is was not supported by consideration; was overly broad and/or ambiguous in terms of geographical limitations and breadth of services; and presents an unlawful restriction on trade and competition in the marketplace as it can be read to prohibit Plaintiff from obtaining employment or rendering any services related to Neverland's services throughout the world.

70. Counsel for Plaintiff has attempted to ascertain the geographical area that Neverland intended to be affected by the non-compete, without response from Neverland's counsel.

71. By reason of the foregoing, an actual and justiciable controversy exists between the parties, which may be determined by a judgment or order of this Court. Pursuant to the 28 U.S.C. §2201 and Fed. R. Civ. P. 57, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policies of the

Agreement, and to adjudicate the final rights of all parties, and to give such other and further relief as may be necessary to enforce the same.

## COUNT V
## WRONGFUL DISCHARGE AGAINST NEVERLAND
### (*Plead in the Alternative*)

72. Plaintiff re-alleges and incorporates Paragraphs 1 through 71 as if fully set forth herein.

73. Despite the language as agent and contractor in the Agreement, Defendants often referred to Plaintiff as an "employee" of Neverland, and even cited to Plaintiff's "Employment Contract" with Neverland in correspondence with Plaintiff on or about May 31, 2018. [citation]

74. Plaintiff was often directed to act in the capacity of an employee of Neverland under the direction of Defendants. Plaintiff would pitch for pre-existing Neverland clients regularly at the request and sole benefit of Defendants.

75. Plaintiff did not receive or ask for commission for work done for pre-existing Neverland clients.

76. On or about June 6, 2018, Plaintiff was immediately terminated by way of an attorney's letter. Plaintiff did not actually receive notice of termination until receipt of letter on or about June 12, 2018. *See* Exhibit E.

77. In violation of the Agreement, Defendants did not send an initial Ten (10) Day Notice to Cure correspondence to Plaintiff.

78. Finally, Defendants cite broadly that Plaintiff violated the terms of the Agreement by, "Solicitation of Neverland's clients or accounts" and "Harassment of Neverland's clients or accounts". However, no specifics or evidence are provided whatsoever to substantiate

Defendant's false allegations. Defendants had no material cause for which to terminate Plaintiff employment. *See* Exhibit D.

79. Plaintiff is entitled to unemployment compensation as an employee of Neverland fired without cause, proper notice, or notice to cure.

## PRAYER FOR RELIEF

Plaintiff, GINA GARAN, by and through her attorneys Blaise and Nitschke, P.C., respectfully requests that this Honorable Court enter judgment against Defendants, NEVERLAND EVENTS & ARTIST MANAGEMENT and ANTHONY DIFIORE in an amount to be proven at trial, and such other relief as the Court deems just and equitable, including but not limited to pecuniary damages, compensatory damages, consequential damages, unemployment compensation (for immediate termination of employee and failure of notice to cure, plead *alternatively*), commission on all contracts for clients obtained during Plaintiff's employment with Neverland, costs and expenses of suit, reasonable attorneys' fees, and for such and further relief that this Court or a jury deems appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all claims.

                        Respectfully Submitted,
                        GINA GARAN

                 By: */s/ Heather L. Blaise*____
                      One of Plaintiff's attorneys

Blaise &Nitschke, P.C.
123 N. Wacker Drive, Suite 250
Chicago, Illinois 60606
T: (312) 448- 6602
F: (312) 803-1940
hblaise@blaisenitschkelaw.com
Firm No. 58829

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, being first duly deposes and states that the above and attached was served to all parties of record via the CM/ECF electronic filing system on this 10th day of September 2018.

> */s/ Heather L. Blaise*
> Heather L. Blaise, Esq.